1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| CALIFORNIA YACHT MARINA – CHULA VISTA, LLC, | Case No. 14-cv-01215-BAS(BGS) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID** |
| v. | (ECF No. 16) |
| S/V OPILY, A 40-FOOT 1975 KIENNER SAILING VESSEL, CF NO. CF6116KW, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, *in rem*, | |
| Defendant. | |

11

12

13

14

15

16

17

18

19

20

21

22    On May 14, 2014, Plaintiff California Yacht Marina – Chula Vista, LLC

23  ("Plaintiff") commenced this action in admiralty against Defendant S/V Opily, a 40-

24  foot 1975 Kienner sailing vessel, bearing California CF No. CF6116KW, and all of

25  her engines, tackle, accessories, equipment, furnishings and appurtenances, *in rem*

26  ("Defendant Vessel"), by filing a verified complaint for vessel arrest, interlocutory

27  sale, and for money damages for trespass, breach of maritime contract and *quantum*

28  *meruit*.  (ECF No. 1)

On May 28, 2014, the Court issued Orders appointing a substitute custodian and authorizing the movement and arrest of the Defendant Vessel.  (ECF Nos. 6, 7.)  The arrest warrant was thereafter executed on June 20, 2014.  (ECF No. 10.)  On July 29, 2014, the Clerk entered default against the Defendant Vessel.  (ECF No. 14.)  Presently before the Court is a motion filed by Plaintiff for interlocutory sale of the Defendant Vessel and for authorization to credit bid at the sale.  (ECF No. 16.)  No appearance has been made in this action on behalf of the Defendant Vessel and no opposition has been filed to the present motion.

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Plaintiff's motion (ECF No. 16).

## I.      BACKGROUND

Plaintiff operates a marina in Chula Vista, California.  On or about May 21, 2006, John Mallen, who is believed to be the sole owner of the Defendant Vessel, executed a License Agreement ("Agreement") with Plaintiff.  (Compl. at Ex. A.)  Pursuant to the Agreement, Plaintiff provided wharfage services for the benefit of the Defendant Vessel commencing on June 1, 2006.  (*Id*. at ¶ V.)  The monthly slip fee is listed as $540, with an additional $100 live aboard fee.  (*Id*. at ¶¶ VI, IX.)

The Agreement provides that the license continues on a "month to month basis until default under the provisions of th[e] license or until terminated by either party by prior written notice of the intent to terminate given not less than thirty (30) days before the effective days thereof."  (*Id*. at p. ¶ 3.)  The Agreement further states that Plaintiff "shall have all liens provided for in the California Harbors and Navigation Code and such other liens, rights and remedies, including the right to sell the Vessel at public auction, and under California or Federal Law, as each may be applicable."  (*Id*. at ¶9.)

Over the course of many months, Plaintiff alleges the account for the Defendant Vessel fell progressively further behind, standing in arrears at the time of

1   the filing of the Verified Complaint in an amount of not less than $10,949.81.

2   (Compl. at ¶ 5.)  Plaintiff alleges it tendered monthly invoices demanding payment

3   and otherwise made demands that the account be brought current.  (*Id.*)

4   Plaintiff further alleges that on January 27, 2014, its attorney mailed a letter

5   via Certified and First Class U.S. Mail to Mr. Mallen, listed as the registered and

6   legal owner of the Defendant Vessel on the Agreement, demanding payment of the

7   arrearages in full or alternatively an acceptable payment plan.  (*Id.* at ¶ 6.)  The letter

8   also provided notice that "the License Agreement will be terminated in 34 days, that

9   is, on March 4, 2014," and that if the Defendant Vessel was not removed from

10   Plaintiff's marina by that date she would "be regarded as a trespasser for all

11   purposes."  (*Id.*)  Plaintiff's letter further notified Mr. Mallen of its position that "as

12   a result of the failure to pay wharfage fees, a maritime 'necessities' lien encumbers

13   the Defendant Vessel and as a result Plaintiff 'is entitled to foreclose on [the

14   maritime lien] by obtaining Orders from the U.S. District Court requiring the U.S.

15   Marshal to seize the offending vessel and subsequently sell her at public auction.'"

16   (*Id.*)  Neither Plaintiff nor its counsel received a response to the letter.  (*Id.*)

17   Plaintiff alleges that in spite of this admonition and the multiple demands that

18   the Defendant Vessel's account be brought current, the account was not brought

19   current and the Defendant Vessel failed and refused to vacate Plaintiff's marina

20   following termination of the Agreement.   (*Id.* at ¶¶ 8, 12.)  Plaintiff has accordingly

21   alleged that, in addition to its maritime lien based on the provision of wharfage

22   services (a "necessaries" lien under 46 U.S.C. sections 31301 *et seq*)., an additional

23   maritime lien arose and subsists against the Defendant Vessel on account of her

24   trespass at Plaintiff's marina.  (*Id.* at ¶¶ 11-14.)

25   As a consequence of the Defendant Vessel's owner's failure to vacate her

26   from Plaintiff's marina following termination of the Agreement and his failure to

27   pay all or any part of the wharfage fee arrearages, Plaintiff filed a Verified

28   Complaint commencing this action on May 14, 2014.  On May 28, 2014, the Court

1   issued Orders appointing a substitute custodian and authorizing the movement and

2   arrest of the Defendant Vessel.  (ECF Nos. 6, 7.)  The arrest warrant was thereafter

3   executed on June 20, 2014.  (ECF No. 10.)  On July 29, 2014, the Clerk entered

4   default against the Defendant Vessel. (ECF No. 14.)       No representative of the

5   Defendant Vessel has appeared or otherwise contacted the Court.

6        Plaintiff now seeks entry of an Order requiring the United States Marshal to

7   sell the Defendant Vessel as soon as possible at public auction, so the proceeds (if

8   any) can be used to satisfy in whole or part Plaintiff's maritime liens. Plaintiff

9   contends the relief sought is proper because the Defendant Vessel is deteriorating

10  while in custody, because there has been no effort to secure her release, and because

11  the expenses of keeping her are excessive or disproportionate to her value.

12  **II.    DISCUSSION**

13       **A.    Interlocutory Sale of Defendant Vessel**

14       "The interlocutory sale of a vessel is not a deprivation of property but rather a

15  necessary substitution of the proceeds of the sale, with all of the constitutional

16  safeguards necessitated by the *in rem* process."  *Ferrous Fin. Servs. Co. v. O/S*

17  *Arctic Producer*, 567 F.Supp. 400, 401 (W.D. Wash. 1983).  Supplemental Rule for

18  Certain Admiralty and Maritime Claims E(9)(a)(i) of the Federal Rules of Civil

19  Procedure provides:

20           On application of a party . . . the court may order all or part of the
             property sold—with the sale proceeds, or as much of them as will
21           satisfy the judgment, paid into court to await further orders of the
22           court—if: (A) the attached or arrested property is perishable, or liable
             to deterioration, decay, or injury by being detained in custody pending
23           the action; (B) the expense of keeping the property is excessive or
24           disproportionate; or (C) there is an unreasonable delay in securing the
             release of the property.
25

26  In order to prevail, the moving party need only show one of these three criteria is

27  met. *Merchants Nat. Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338,

28  1341 (8th Cir. 1981).  Plaintiff argues that the Court should order the Defendant

Vessel to be sold based on all three provisions of Rule E(9)(a)(i).  For the reasons set forth below, the Court agrees that interlocutory sale of the Defendant Vessel is justified under Rule E(9)(a)(i) under all three criteria.

### 1.   Defendant Vessel is Liable to Deterioration

Plaintiff argues that because the Defendant Vessel is currently being maintained in a limited way to preserve against accident and is primarily sitting idle, its machinery, equipment and general condition will begin to deteriorate.  (Mot at p. 5.)  Plaintiff further argues that the value of the Defendant Vessel will deteriorate commensurately with its condition.  (*Id*.)  As provided in this Court's Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel, Plaintiff, as substitute custodian, is in charge of providing general custodial services, including periodic inspections of the exterior and interior of the boat for evidence of water leaks, ensuring safe mooring, and providing such services that "are deemed reasonably prudent and necessary to preserve and protect the Defendant Vessel." (ECF No. 6 at ¶ 4.)  However, the Defendant Vessel's engines and other machinery are only to be operated as directed by the Court, which it has not done to date.  (*Id*.)

Plaintiff's expert, Ray Jones, states that, while he has not personally inspected the Defendant Vessel, based on his experience he believes that if the Defendant Vessel "is permitted to lay idle without routine maintenance and without proper lay-up preparations, the vessel's engine might (even if now operational) rust and freeze up, necessitating costly overhaul."  (ECF No. 16-3 at ¶ 3.)  He further believes that "electric and electronic equipment aboard the Defendant Vessel is susceptible to inevitable corrosion, rust and general deterioration."  (*Id*.)  Given the arrested, and therefore "distressed," nature of the Defendant Vessel, Mr. Jones believes the fair market value of the Defendant Vessel at public United States Marshal auction will likely not exceed $12,000.  (*Id*. at ¶ 4.)  He further opines that it is "unavoidable" that the Defendant Vessel will "deteriorate in condition and value as she sits idle in salt water, and that the longer the vessel remains under arrest and therefore idle the

1    greater the deterioration will be."  (*Id*. at ¶ 5.)

2         While the Court has not been presented with any evidence the Defendant

3    Vessel has in fact deteriorated, the Court finds that the Defendant Vessel is liable to

4    deterioration or injury if it remains arrested during the pendency of this action.  *See*

5    *Merchants Nat'l Bank of Mobile*, 663 F.2d at 1342 (finding district court's

6    assessment the subject vessels were liable to deterioration or injury by being

7    detained in custody was not clearly erroneous upon being presented with expert

8    evidence suggesting vessels without routine maintenance might rust and freeze

9    necessitating costly overhaul, and the electric equipment is susceptible to corrosion,

10   rust, and general deterioration).

11                    **2.       Unreasonable Delay in Securing Release**

12        Plaintiff argues there has been unreasonable delay in securing the release of

13   the Defendant Vessel.  The Court agrees.  As Plaintiff discusses, the Supplemental

14   Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure

15   provide procedures for the release of an arrested vessel and for a speedy hearing on

16   behalf of any interested person who wants the arrested vessel released, but "no

17   person or entity has answered or otherwise responded to the Verified Complaint,

18   posted or sought to post security for the release of the vessel, or requested a prompt

19   hearing under Supplemental Admiralty Rule E(4)(f)."  (Mot at pp. 6-7.)

20        While a motion for interlocutory sale generally should not be granted unless

21   the court has permitted defendants sufficient time to provide a bond to secure the

22   vessel's release, the Court finds that sufficient time has passed.  *See Vineyard Bank*

23   *v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283*, No. 08cv2044, 2009 WL 799304,

24   at *2 (S.D. Cal. Mar. 23, 2009); *see also Bank of Rio Vista v. Vessel Captain Pete*,

25   No. C 04-2736CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct.14, 2004) ("As a

26   general rule, defendants are given at least four months to bond a vessel absent some

27   other considerations." (quoting *United States v. F/V Fortune*, 1987 WL 27274, at *1

28   (D. Alaska April 14, 1987)); *Ferrous Fin. Servs. Co.,* 567 F. Supp. at 401 (finding in

1   case, where defendants appeared in the action, that no attempt to secure release of

2   vessel within four months since arrest was unreasonable delay); *Merchants Nat'l*

3   *Bank of Mobile*, 663 F.2d at 1341-42 (failure to secure the release of the vessel eight

4   months after arrest constitutes unreasonable delay).  Here, the Defendant Vessel was

5   arrested on June 20, 2014, nearly nine months ago.  Default has been entered and no

6   person claiming an interest in the vessel has come forward or attempted to secure its

7   release.  Accordingly, the Court finds there has been an unreasonable delay in

8   securing the release of the Defendant Vessel.

### 3.      Excessive or Disproportionate Maintenance Expense

10          Maintenance expenses of several thousand dollars per month, particularly

11   where a defendant has made no attempt to answer the complaint or secure the

12   vessel's release, are excessive and disproportionate.  *Vineyard Bank*, 2009 WL

13   799304 at *2; *see also Merchants Nat. Bank of Mobile*, 663 F.2d at 1342

14   (interlocutory sale warranted where vessel accrued $17,000 per month in

15   maintenance and insurance fees and claimants delayed eight months after seizure in

16   attempting to secure release); *see also Ferrous Fin. Servs. Co.*, 567 F.Supp. at 401

17   (W.D. Wash. 1983) (finding expense excessive and delay unreasonable where cost

18   of maintaining the vessel was $166,000 per year and defendant made no attempt to

19   secure its release for four months).

20          Mr. Jones estimates the fair market value of the Defendant Vessel at public

21   United States Marshal auction will likely not exceed $12,000.  (ECF No. 16-3 at ¶

22   4.)  As of October 2014, substitute custodian fees totaled more than $6,000, and they

23   have continued to grow.  (Mot. at p. 8.)  Accordingly, the Court finds that the

24   expense of keeping the Defendant Vessel is disproportionate to its value.

25          Taking into account the disproportionate cost of maintaining the Defendant

26   Vessel, the unreasonable delay in securing its release, and the likelihood of

27   deterioration, the Court finds interlocutory sale warranted under Rule E(9)(a)(i) and

28   **GRANTS** Plaintiff's motion for interlocutory sale of the Defendant Vessel.

**B. Credit Bid**

Plaintiff further requests that the Court authorize Plaintiff to credit bid at the auction of the Defendant Vessel. (Mot at p. 10.) Local Admiralty Rule E.1(e)(2) provides:

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

Civ. L.R. E.1(e)(2). Plaintiff argues that no party apart from Plaintiff has asserted any maritime lien claim against the Defendant Vessel; therefore, "as the *only* maritime lien claimant, Plaintiff's claim is, by definition, senior to all other claims in this action." (Mot at p. 10.)

Accordingly, Plaintiff seeks to bid an amount up to the lien amount attested to under oath in the Verified Complaint ($10,949.81), plus its actual and demonstrable costs of suit, including United States Marshal, substitute custodian and other *custodia legis* expenses, to be calculated through the date of the vessel sale at the rates provided by this Court's Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. (*Id.*) Provided that Plaintiff complies with Local Admiralty Rule E.1(e)(2) by establishing the total amount of the secured indebtedness by affidavit filed and served on all other parties no later than seven (7) days prior to the date of the sale, the Court **GRANTS** Plaintiff's request to credit bid at the auction of Defendant Vessel. *See Bank of Rio Vista*, 2004 WL 2330704, at *2-3.

///

///

///

## III.    CONCLUSION & ORDER

For the reasons stated above, Plaintiff's motion for interlocutory sale and authorization to credit bid is **GRANTED** (ECF No. 16).  Accordingly, **IT IS HEREBY ORDERED** that:

1.      The United States Marshal be and is hereby directed and empowered to sell the Defendant Vessel, her engines, tackle, accessories, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having caused notice of said sale to be published at least seven (7) days immediately before the date of sale, as required by Local Admiralty Rule E.1(e)(1).  Such notice shall specify the date and time of the auction;

2.      Consistent with Local Admiralty Rule E.1(e)(2), such public notice shall specify that the last and highest bidder at the sale will be required to deposit with the United States Marshal cash, certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays;

3.      Any proceeds of said sale shall be held by it or deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court;

4.      As Plaintiff is the only party in this action for purposes of Local Admiralty Rule C.1(e)(2) and as it has demonstrated the seniority of its lien, Plaintiff shall be authorized to credit bid at the public auction of the Defendant Vessel without cash in the amount attested on under oath in its Verified Complaint, ($10,949.81, through February 12, 2014), plus actual and demonstrable costs of suit accruing through the date of the auction of the Defendant Vessel, including United States Marshal fees, Substitute Custodian fees and other *custodia legis* expenses, costs to insure the Defendant Vessel, prejudgment interest and the fee paid to the

1   Clerk of the Court to file the Verified Complaint, but not including attorneys' fees,

2   or such other total established by the affidavit required by Local Admiralty Rule

3   E.1(e)(2);

4       5.      Should Plaintiff elect to credit bid, it shall file and serve all parties with

5   its affidavit establishing the total amount of its secured indebtedness no later than

6   seven (7) days prior to the date of the sale of the Defendant Vessel, as required by

7   Local Admiralty Rule E.1(e)(2); and

8       6.      Pursuant to Local Supplemental Admiralty Rule E.1(e)(2), that if

9   within three days of the auction date, exclusive of Saturdays, Sundays, and legal

10  holidays, no written objection to the sale of the Defendant Vessel is filed, the sale

11  shall stand confirmed as of course, without the necessity of any affirmative action

12  thereon by a judge, except that no sale shall stand confirmed until the buyer has

13  complied fully with the terms of the purchase.

14      **IT IS SO ORDERED.**

15

16  **DATED:  March 16, 2015**

17  Hon. Cynthia Bashant
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28